UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MICHAEL LEON WILLIAMS,

Plaintiff,

v.

DANIEL OMLER, *et al.*,

Defendants.

Case No. 3:25-cv-00309-MMD-CLB

SCREENING ORDER

## I. SUMMARY

Pro se Plaintiff Michael Williams brings this civil-rights lawsuit under 42 U.S.C. § 1983 to redress constitutional violations that he allegedly suffered while incarcerated at Northern Nevada Correctional Center. (ECF No. 6.) In screening Williams' original complaint, the Court dismissed his Fourteenth Amendment due process claim about disciplinary procedures with leave to amend and dismissed his other claims with prejudice. (ECF No. 5.) Williams timely filed his First Amended Complaint (ECF No. 7 ("FAC")), which the Court now screens under 28 U.S.C. § 1915A.

## II. SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United

States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, the Prison Litigation Reform Act requires a federal court to dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious"; "fails to state a claim on which relief may be granted"; or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995), *superseded on other grounds by* 28 U.S.C. § 1915(e).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a pro se complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels, conclusions, or a formulaic recitation of the claim's elements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may be dismissed sua sponte if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist, as well as claims based on fanciful factual allegations, like fantastic or delusional scenarios. *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989), *superseded on other grounds by* 28 U.S.C. § 1915(e); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## III. SCREENING OF FAC

### A. Factual Allegations

Correctional officer Daniel Omler charged Williams with possession or sale of intoxicants. (ECF No. 7 at 2.) Omler did not sign the report. (*Id.*) The report states that Omler confiscated approximately one gallon of prison-made alcohol from Williams. (*Id.* at 4.) The report does not contain a "narrative[,]" like the liquid's "smell, taste, or test" to support that it was alcohol. (*Id.* at 2.) The report includes a photograph that conflicts with the claim that a gallon of alcohol was confiscated from Williams. (*Id.* at 4.)

Correctional officer Richard Ashcraft conducted the disciplinary proceeding in which Williams was convicted of the charge. (*Id.* at 5.) The disciplinary committee relied on Omler's report, uploaded photos, and Williams's not-guilty plea in convicting him. (*Id.* at 5–6.) Nothing the committee cited "would substantiate the charge of MJ53 possible intoxicants." (*Id.* at 5.) As a result of the guilty finding, Williams was sanctioned with confiscation of items of his personal property. (*Id.* at 4.)

The guilty finding negatively impacts Williams's parole eligibility. (*Id.*) He's serving two life sentences with the possibility of parole, has an upcoming parole hearing, and wants to expunge the finding from his prison record. (*Id.* at 6.) Administrative Regulation 707.113 requires prison officials to forward "the original signed copies of the Notice of Charges" to the inmate after a disciplinary hearing. (*Id.* at 4.) This was not done. (*Id.*)

Williams appealed the guilty determination. (*Id.* at 7.) Associate Warden Robert Hartman rejected the appeal four times, "fraudulently accusing [Williams] of failing to attach documents in support of his appeal." (*Id.*) Williams provided the documents that Hartman claimed were missing; they were stamped received on the same day as the grievance memos, "indicating they were available for review." (*Id.*) Williams attached documents from the disciplinary and grievance processes to his FAC. (*Id.* at 9–35.)

**B. Analysis of Claims**

Based on the allegations summarized above, Williams sues Daniel Omler, Richard Ashcraft, and Robert Hartman. (*Id.* at 1–2.) He brings three claims under the Fourteenth Amendment's Due Process Clause about disciplinary and grievance procedures and seeks monetary and injunctive relief. (*Id.* at 4–8.) The Court provided Williams with the legal standards for his claims when it screened his original complaint, and it does not restate them here. (ECF No. 5 at 5.)

**1. Fourteenth Amendment—Grievance Procedures**

Williams fails to state a colorable due process claim about grievance procedures (Claim 3). Allegations that Hartman repeatedly and fraudulently rejected Williams's administrative appeal do not state a colorable due process claim. Prisoners lack a protected liberty or property interest in the administrative grievance process, so a prison official's rejection, denial, or refusal to accept or process an inmate's grievance does not state a cognizable substantive or procedural due process claim even if the prisoner contends the official's act or omission was improper. *See, e.g., Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (explaining "[t]here is no legitimate claim of entitlement to a grievance procedure" and holding the department of corrections' "unpublished policy

statements create no protected liberty interest"); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (holding inmates do not have a liberty interest in the processing of administrative appeals "because inmates lack a separate constitutional entitlement to a specific prison grievance procedure"). The Fourteenth Amendment due process claim about grievance procedures is dismissed with prejudice.

**2. Fourteenth Amendment—Disciplinary Procedures**

Williams fails to state a colorable claim about disciplinary procedures (Claims 1 and 2). Williams alleges that he had a liberty interest in the disciplinary proceeding because the guilty finding negatively affects his parole eligibility. But Nevada prisoners do not have a liberty interest in parole. *Galanti v. Nevada Dep't of Corr.*, 65 F.4th 1152, 1156–58 & n.2 (9th Cir. 2023). Nevada prisoners have a liberty interest in credits they've earned against a maximum sentence, but Williams does not allege that happened here. And he is not likely to do so because, according to the FAC, he's serving two life-with-possible-parole sentences. *See Hunt v. Warden, Nevada State Prison*, 903 P.2d 826, 827 (Nev. 1995) (holding that the NDOC is not obligated to apply good time credits for prisoners serving life sentences but should record them because the "sentence may later be modified").

Generously construed, however, the allegations and documents attached to the FAC state that Williams had a property interest at stake in the disciplinary proceeding because sanctions included restitution and forfeiture of items that were confiscated from his cell like electronics. Nevada prisoners have a protectable interest in their personal property. *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011). Williams thus satisfies the first step of the analysis. But these claims falter at the second step: whether Williams was denied adequate process in the disciplinary proceeding.

Williams was served with written notice of the charge (MJ53 possession/sale of intoxicants) and bases for it (Omler's report and photographs) one month before the disciplinary hearing. He participated in a preliminary hearing in which he pled not guilty and requested four inmates as witnesses at the disciplinary hearing. One month later,

Ashcraft presided over the disciplinary hearing in which affidavits from Williams' four witnesses were accepted and Williams was found guilty by the committee based on his plea and Omler's report. Williams received written notice of the committee's decision and evidence that it relied on to find him guilty.

The Constitution does not require additional or different procedures than what Williams received. *See Wolff v. McDonnell*, 418 U.S. 539, 563–70 (1974). For instance, Williams alleges that Omler did not sign the charging report or notice of charges, but courts have not required signed documents in this context. Rather, prison officials must provide the prisoner with "written notice of the charges" "no less than 24 hours" before the disciplinary hearing to "inform him of the charges and to enable him to marshal the facts and prepare a defense." *Id.* at 564. Williams also contends that no evidence supported the guilty finding because Omler didn't sign the charging report and his statement that he confiscated approximately a gallon of prison-made alcohol from Williams' cell is belied by a photograph showing less than a gallon of liquid.

To satisfy due process, "the findings of the prison disciplinary board [must be] supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). This is "a minimally stringent standard requiring only that there is *any* evidence in the record that *could* support the conclusion reached by the disciplinary board." *Ashker v. Newsom*, 81 F.4th 863, 884 (9th Cir. 2023) (citation modified) (emphasis in the original). "In examining the record, the court is not to make its own assessment of the credibility of witnesses or reweigh the evidence." *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). Williams has failed to show the disciplinary committee's decision was "without support or otherwise arbitrary." *See Hill*, 472 U.S. at 457. Rather, Williams' allegations and documents show the finding could be supported by Omler's report that he confiscated numerous items from Williams' cell including "65 altered batteries" that are "commonly used as ignition devices" and "prison made alcohol" and his photographs of the items. (*See* ECF No. 7 at 21–29.) This satisfies due process. *See Wolff*, 418 U.S. at 556 ("Prison disciplinary proceedings are not part of a criminal

prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.").

The Court finds that additional leave to amend would be futile because this is Williams' second attempt to state a claim about the disciplinary proceeding and he has failed to do so. The Fourteenth Amendment due process claim about disciplinary procedures is dismissed with prejudice.

## IV. CONCLUSION

It is therefore ordered that this action is dismissed with prejudice based on the plaintiff's failure to state a colorable claim for relief. The Clerk of Court is directed to enter judgement accordingly and close this case.

It is further ordered that the application to proceed *in forma pauperis* (ECF Nos. 1, 4) is granted. This status doesn't relieve Williams of his obligation to pay the full $350 filing fee under 28 U.S.C. § 1915; it just means that he can do it in installments. And the full $350 filing fee remains due and owing even though this case is being dismissed.

It is further ordered that the Nevada Department of Corrections will forward payments from the account of Michael L. Williams, #63077, to the Clerk of the United States District Court, District of Nevada, 20% of the preceding month's deposits (in months that the account exceeds $10) until the full $350 filing fee has been paid for this action.

DATED THIS 4th Day of September 2026.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE